CENTRAL UNION TRUST COMPANY OF NEW YORK, AS EXECUTOR OF THE ESTATE OF DANIEL T. GARRIE, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 31736. Promulgated February 29, 1932.

*Frank W. Chambers, Esq.*, for the petitioner.
*Maxwell E. McDowell, Esq.*, for the respondent.

760

OPINION.

MATTHEWS: In the notice dated August 12, 1927, there is asserted against the estate of Daniel T. Garrie a deficiency in tax for 1919 in the total sum of $124,167.75, of which amount the sum of $98,-524.53 represents a timely assessment made in March, 1925. The fraud penalty amounting to $49,262.27, which was also assessed in March, 1925, was withdrawn by the respondent at the hearing. It was admitted by the respondent that the balance of the deficiency in the sum of $25,643.22 was barred from assessment by the statute of limitations unless fraud could be shown and the respondent assumed the burden of proof in respect of fraud, in accordance with the provisions of section 601 of the Revenue Act of 1928. The total deficiency asserted was claimed by the respondent to have arisen out of the fraudulent understatement of income from the sale of cigarettes. Although the notice of deficiency does not clearly set out the method used in arriving at the proposed additional tax, it is stated in the brief filed for the respondent that the additional assessment in the sum of $98,524.53 was based on the disallowance by the respondent of a deduction for commissions which was claimed by Garrie in the sum of $361,737.30, and that the unassessed portion of the deficiency in the sum of $25,643.22 resulted from the action of the respondent in adding to the income reported by Garrie one-half

of the profits from the business carried on under the name of A. H. Hillman Company.

We shall not discuss in detail the evidence which was introduced at the hearing, but a brief résumé of the essential facts will prove helpful in outlining the issues presented for determination.

At the beginning of the taxable year Garrie was the holder of valuable orders for the sale of cigarettes to the Knights of Columbus and he had enlisted the aid of A. H. Hillman, who had been closely connected with the tobacco business for many years, in securing manufacturing sources to be utilized in filling these orders. Hillman testified that it was easy to get orders for cigarettes at this time, but that it was not so easy to supply the cigarettes. Hillman procured a factory in 1918 to manufacture cigarettes and the total output was applied toward filling the orders which had been obtained by Garrie from the Knights of Columbus. For several months during 1918 the sales were handled through the A. H. Hillman Company under contracts with the Turko-American Tobacco Company trading under the name of Oriental-American Tobacco Company. After December 23, 1918, the orders were filled by Garrie trading as the Oriental-American Tobacco Company. Garrie's books were kept on the accrual basis, in the name of Oriental-American Tobacco Company. On December 30, 1918, Garrie entered into contracts with Hillman, with Konwiser (who was Hillman's associate in publishing a trade paper) and with Hillman's three sons, by the terms of which he agreed to pay to these parties commissions totaling 15 per cent of the gross sales of the Oriental-American Tobacco Company. These contracts determined the division between Garrie, on the one hand, and the Hillmans and Konwiser, on the other, of all profits derived in 1919 from the sale of cigarettes to the Knights of Columbus. The gross sales of cigarettes in 1919 amounted to $2,411,581.96, and 15 per cent of this amount is $361,737.30.

We do not know the underlying reasons for the execution of these contracts of employment. The petitioner claims that A. H. Hillman was in a position to dictate terms to Garrie and that Hillman contrived to spread his share of the profits by having Garrie pay over such profits to himself, his three sons and Konwiser under the guise of commissions, it being contended by the petitioner that the three sons and Konwiser were dummies for Hillman and that he ultimately received the entire amount of the commissions which Garrie agreed to pay under the several contracts of employment. The respondent questions the *bona fides* of the contracts of employment, claiming that they were only a blind intended to obscure the real nature of the transactions. The respondent admits that the gross sales of cigarettes were correctly reported by Garrie, but

has wholly disallowed the deduction for commissions in the sum of $361,737.30, on the ground that the sums making up this item were not in fact paid out by Garrie. It is further claimed by the respondent that certain payments which were apparently made in 1919 under the contracts of employment were repaid to Garrie in the same year.

Respondent contends that although the terms of the contract between Garrie and Hillman dated May 1, 1918, are not known, it may be inferred from other evidence that it provided for an equal division of the profits between them and that this original contract was revived by the cancellation on December 30, 1918, of the contract of December 23, 1918, so that the terms of the contract of May 1, 1918, remained in force throughout the taxable year. In addition to disallowing the deduction for commissions the respondent has included in Garrie's income one-half of the profits from the business carried on under the name of A. H. Hillman Company.

On the basis of all the evidence adduced at the hearing we believe that petitioner has sustained the burden of proving that the respondent's determination is incorrect and that the respondent has failed to establish that Garrie was guilty of fraud with intent to evade tax. Although the method of dividing profits from the sale of cigarettes may seem to be unusual, we find nothing in the record to impeach the *bona fides* of the contracts of employment. We have found that in compliance with the terms of these contracts Garrie paid by check in 1919 sums totaling one-half of the commissions due thereunder, proper entries being made on his books under the names of the several payees, and that the remaining one-half of the total commissions due was entered on his books as "accrued commissions." Inasmuch as his books were kept on the accrual basis, such an entry was authorized and he was entitled to claim as a deduction the full amount of the commissions, whether paid or accrued. Petitioner introduced in evidence Garrie's books and records, together with a number of canceled checks, vouchers, receipts and other papers and this documentary evidence is relied upon to support the petitioner's position. The book entries were not always made on the dates the respective transactions occurred, but were entered by Garrie's accountant from time to time from vouchers, check stubs, invoices, receipts and other memoranda. The cash book entries show the numbers of the checks and the checks themselves were offered in evidence to show that the money was received by the payees or by A. H. Hillman. The commissions which were accrued were shown to have been paid in cash and bonds in January, 1921, and an entry of payment of the balance due on the accrued commissions was made on Garrie's books as of December 31, 1920.

The respondent is claiming that even if these sums were paid to the persons " employed " by Garrie, the money was repaid to Garrie in the same year. An examination of the checks drawn by Garrie to Konwiser and the three Hillman sons shows that some of these checks were endorsed to A. H. Hillman and it was testified that no consideration moved from A. H. Hillman to his sons or to Konwiser for the amounts so received. Hillman testified that he turned back to Garrie in 1919 cash amounting to approximately $120,000. His testimony with respect to repayments to Garrie was greatly weakened by his imperfect recollection of the transactions and nothing in the record indicates that they exceeded $120,000.

We think the respondent has failed to establish that any of the amounts returned by Hillman to Garrie represented income to Garrie or was kept by him for his own use. On the contrary, we have found that Garrie paid to Konwiser and the three Hillman sons in 1919, in addition to the payments covering one-half of the commissions due under the contracts of employment, an aggregate amount of $112,000, or $28,000 each, which payments were made by checks drawn by Garrie and were not charged on his books to the accounts of the several payees, but were charged in each instance to the Liberty bond account. No deduction is claimed on Garrie's income-tax return for 1919 on account of the payment of these amounts totaling $112,-000. We do not know why Garrie should have paid out these sums only to take them back and invest them in Liberty bonds, which were subsequently turned over to the Hillmans in payment of accrued commissions, but we find the petitioner's explanation, supported by Garrie's books and the contracts, to be more plausible than the theory advanced by the respondent.

It must be borne in mind that Garrie is dead and can not come before us to explain the full nature of the transactions or to defend against the charge of fraud. The evidence leaves many loopholes and it is difficult to ascertain the true facts. Where no convincing explanation is given, we must draw whatever conclusion appears to be most reasonable, but fraud will not be imputed to a taxpayer in the absence of persuasive evidence.

The presumption that the respondent's determination is *prima facie* correct does not extend to that portion of the deficiency in the sum of $25,643.22 which has not been assessed and which, in the absence of fraud, is barred by the statute of limitations. The respondent's determination in respect of this amount admittedly rests upon the conclusions drawn by him from the books of the A. H. Hillman Company, but he has not produced those books. No evidence has been introduced to show that Garrie failed to report

any income received by him in 1919 from the business of the A. H. Hillman Company, or that he was entitled to any share of the profits from such business.

It not appearing in the instant case that Garrie understated his income for 1919, and his return being supported in all particulars by his books and records, we are of the opinion that the respondent erred in rejecting the claim for abatement which was filed by the executors of his estate.

*Judgment will be entered for the petitioner.*